UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DAVID BRAUNSTEIN ANITA PATWARDHAN BUTLER, HECTOR G CAMARGO, HAO CHEN, YUN CHENG, NICOLAS DIOLI, RYAN FLEISHER, MARLEO ACHU FOBUZIE, BRAXTON A FREDERICK, GRANT PARKER GARNER, SUWEN GE, SAMUEL JOSEPH GERSTEIN, ADRIANNA GONZALEZ-SHREEVE, JENNIFER LEIGH HAMON, MATTHEW JOSEPH HART, MOSTAFA KEIKHA, TINA KIT, RACHEL LATHE, TOMO LAZOVICH, SANGHOON LEE, ANG LI, MATTHEW JOSEPH MCPHERSON, MATTHEW MILLER, TAYLOR WILLIAM MOORE, KATHLEEN MULLIGAN, VASIL PENDAVINJI, CHRISTOPHER PHAIR, FRANK PORTMAN, JONATHAN RADCLIFFE, TSVETOMIRA RADEVA, DAVID REGAN, STYLIANI ROELKE, NATHANIEL PHILLIP ROY, ANTHONY ARTHUR SALANI, JESUS SANCHEZ SEVILLA, SHANTHI SANKARANARAYANAN, RUBEN SEGURA, FUMIKA YAMAZAKI-GOUGH, KEN YEE, QIAN ZHANG, YANG ZHANG,<br><br>    Petitioners,<br><br>v.<br><br>TWITTER, INC. and X CORP.,<br><br>    Respondents. | Case No.: |

**PETITION TO COMPEL ARBITRATION**

Petitioners file this Petition for an Order compelling Respondents Twitter, Inc. and X Corp. (collectively, "Twitter") to arbitration as follows:

## NATURE OF THE PETITION

1. Petitioners, all former Twitter Massachusetts employees with whom Twitter has refused to engage in arbitration — despite having previously compelled employees raising similar claims to arbitrate their claims — file this Petition to Compel Arbitration.

2. Since Elon Musk's acquisition of Twitter in October 2022, the company has been accused of a variety of unlawful acts, including failing to pay laid off employees promised severance payments, discriminating against employees on the basis of sex, race, age, and disability, failing to pay promised bonuses, violating the WARN Act and FMLA, and other legal violations. More than 2,000 of Twitter's former employees have attempted to pursue arbitration claims against the company, following Twitter's successfully moving to compel arbitration in several federal class action cases in court against it. While many of these arbitrations are now moving forward, Twitter has used multiple excuses not to participate in arbitration with many employees who have brought claims against it.

3. Most notably, Twitter has refused to pay the full arbitration fees for most employees who worked outside California, Nevada, or Oregon, including Petitioners who all worked for Twitter in Massachusetts. Twitter has refused to pay these fees and allow Petitioners' arbitrations to move forward, even though it has been ordered to do so by both arbitration providers the parties have agreed to use, namely Judicial Arbitration and Mediation Services ("JAMS") and the American Arbitration Association ("AAA").

4. Petitioners thus file this Petition seeking to compel Twitter to arbitrate their cases, pursuant to the rules of the arbitration providers that the parties agreed to, but for which Twitter has refused to participate in the arbitrations.

## PARTIES

5. The Petitioners listed in the case caption are all former employees of Twitter who worked in Massachusetts and who have filed demands for arbitration against Twitter challenging its unlawful actions following Elon Musk's acquisition of the company.

6. Respondent Twitter, Inc. is a Delaware corporation headquartered in San Francisco, California.

7. Respondent X Corp. is a Nevada corporation headquartered in San Francisco, California.

8. In or about March 2023, Twitter, Inc. merged with X Corp., and as a result Twitter, Inc. and X Corp. are a single entity. X Corp. has successor liability for the unlawful acts of Twitter, Inc. Twitter, Inc. and X Corp. are referred to herein as "Twitter".

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this action pursuant to 9 U.S.C. § 4 and 28 U.S.C. § 1332 because the underlying matters in controversy exceed the sum or value of $75,000, exclusive of interest and costs, and the Petitioners reside in a different state from Respondents.

10. This Court has personal jurisdiction over Twitter, Inc. and X Corp. because they have places of business and are doing business in this district.

11. Venue is proper in this district pursuant to 9 U.S.C. § 4 and 28 U.S.C. § 1391(b) because Twitter, Inc. and X Corp. have offices and conduct business in this district, and many of the acts and omissions complained of occurred in this district.

## BACKGROUND

12. Twitter is a social media company that used to employ thousands of people across the United States.

13. In April 2022, it was announced that multi-billionaire Elon Musk would be purchasing the company. Following his purchase, which was completed in October 2022, the company laid off approximately 80% of its employees.

14. Many of these employees have brought various claims against the company concerning their separations from Twitter, including claims related to unpaid promised severance payments, discrimination, and other legal obligations that Twitter has refused to comply with.

15. When class action lawsuits were filed against Twitter in court, Twitter regularly moved to compel arbitration, and it succeeded (with respect to employees who were bound by an arbitration clause). See Cornet v. Twitter, Inc., 2023 WL 187498 (N.D. Cal. Jan. 13, 2023); Borodaenko v. Twitter, Inc., 2023 WL 3294581 (N.D. Cal. May 5, 2023); Rodriguez v. Twitter, Inc., 2023 WL 3168321 (N.D. Cal. May 1, 2023); see also Gadala v. Twitter, Inc., No. 3:23-cv-01595-JSC (N.D. Cal. May 15, 2023); Adler v. Twitter, Inc., No. 3:23-CV-01788 (N.D. Cal. May 12, 2023) (Dkt. 14) (Twitter's motion to compel arbitration, which was withdrawn because plaintiff opted out of arbitration).

16. After Twitter moved to compel arbitration in cases in which former employees brought court actions against it, more than 2,000 Twitter employees brought their claims against Twitter individually in arbitration.

17. However, as discussed below, Twitter has refused to participate in many of these arbitrations, including the arbitrations filed by Petitioners.

18. Petitioners hereby ask this Court to compel Twitter to arbitrate pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4.

19. Petitioners (like thousands of former Twitter employees who have sought to bring claims against Twitter in arbitration) signed nearly identical arbitration agreements that state that they are applicable to any disputes arising from or related to their employment with Twitter or separation of their employment.

20. The majority of these agreements provide that the parties will bring any claims in arbitration before Judicial Arbitration and Mediation Services ("JAMS"), an arbitration service provider, pursuant to the then-current JAMS Rules. See Exhibit 1 (representative JAMS arbitration agreement).

21. Some agreements, however, do not specify JAMS as the arbitration service provider. See Exhibit 2 (representative non-JAMS arbitration agreement).

22. For employees whose agreements do not specify JAMS, Twitter and Petitioners' counsel agreed to use a different arbitration service provider, namely the American Arbitration Association ("AAA").

23. Both JAMS and AAA require that, for employment-related disputes, the employer must pay the full arbitration fees (including arbitrators' compensation), other than for a nominal filing fee, which the employee must pay.[1]

24. However (with a few exceptions), other than for employees who worked in California, Nevada, and Oregon, Twitter has refused to pay the full arbitration fees. Twitter has refused to pay the full arbitration fees for the Petitioners, so their arbitrations have not moved forward.

25. JAMS Rules include a provision stating that, whenever parties have provided for arbitration by JAMS, the parties shall be deemed to have incorporated JAMS Rules as a part of their arbitration agreement. The Rules further provide that any other agreements the parties may make with respect to procedures for employment-related arbitrations must comport with the JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness ("JAMS Minimum Standards"). See Exhibit 3.

26. Pursuant to the Minimum Standards, an employee who brings an arbitration case to JAMS must pay an initial relatively nominal filing fee (no more than the fee that would be required for a court). However, all other arbitration fees, including fees to pay the arbitrator, must be borne by the employer. See Exhibit 3, at 4 (JAMS Standard No. 6).

---

[1] In its Order regarding arbitration, the court in Gadala v. Twitter stated: "Plaintiff [a Florida resident] shall only be required to pay the JAMS arbitration filing fee up to the amount she would pay to initiate an action in this Court; Defendants shall be required to pay all other costs of arbitration." Case No. 3:23-cv-01595-JSC (Dkt. 18).

27. Following Twitter's moving to compel arbitration in the class action lawsuits referenced above, Petitioners whose arbitration agreements specified JAMS as the arbitration association filed arbitration demands against Twitter with JAMS.

28. JAMS notified the parties at the outset of each arbitration case that it determined the Minimum Standards for employment disputes apply. Twitter agreed to their application by including JAMS in its arbitration agreements, not objecting timely to the designation, and (as explained in JAMS Minimum Standards letter) by proceeding in the arbitration process.

29. Pursuant to JAMS procedures, a number of these arbitrations began administration, a number of arbitrators were appointed, and hearing dates and other dates began to be scheduled.

30. However, on June 2, 2023, after approximately 2,000 individual arbitrations had been filed against it, Twitter reversed course. Despite knowing that JAMS rules require employers to pay the full arbitrator fees in employment cases under the Minimum Standards, Twitter submitted a letter to JAMS' General Counsel, Sheri Eisner, requesting that all arbitration fees be split equally among the parties (in all states other than California, Nevada, and Oregon). Counsel for claimants quickly objected.

31. On June 21, 2023, JAMS replied to Twitter's letter, reaffirming that the Minimum Standards were applicable and stating that JAMS would decline to administer arbitrations in which the employer did not agree to abide by the Minimum Standards. See Exhibit 4.

32. On June 28, 2023, Twitter sent another letter to JAMS informing it that Twitter would refuse to proceed with arbitrations in states outside California, Nevada, and Oregon. See Exhibit 5.

33. On June 30, 2023, JAMS informed the parties that it would decline to arbitrate any disputes in which Twitter refused to pay its required fees and claimants did not waive application of the Minimum Standards. Shortly thereafter, JAMS notified the parties that scheduled conferences and hearings in those matters would be cancelled.

34. Twitter's arbitration agreements that specify JAMS as the arbitration provider state that: "Employee and the Company agree to bring any claim in arbitration before Judicial Arbitration and Mediation Services ('JAMS'), pursuant to the then-current JAMS Rules…." Exhibit 1 at 2, § 5.

35. JAMS Rules provide: "(a) The JAMS Employment Arbitration Rules and Procedures ('Rules') govern binding Arbitrations of disputes or claims that are administered by JAMS and in which the Parties agree to use these Rules or, in the absence of such agreement, the disputes or claims are employment-related, unless other Rules are prescribed. (b) The Parties shall be deemed to have made these Rules a part of their Arbitration Agreement ('Agreement') whenever they have provided for Arbitration by JAMS under its Employment Rules or for Arbitration by JAMS without specifying any particular JAMS Rules and the disputes or claims meet the criteria of the first paragraph of this Rule."

36. JAMS Rules further provide: "The Parties may agree on any procedures not specified herein or in lieu of these Rules that are consistent with the applicable law and JAMS policies (including, without limitation, the JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness and Rules 15(i), 30 and 31)."

37. The JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness provides: "The only fee that an employee may be required to pay is JAMS' initial Case Management Fee. All other costs must be borne by the company, including any additional JAMS Case Management Fee and all professional fees for the arbitrator's services." Exhibit 3, at 4 (Standard No. 6).

38. Petitioners, whose agreements specify JAMS as the arbitration provider, filed arbitration demands against Twitter with JAMS. A sample JAMS demand is attached as Exhibit 6.

39. However, Twitter thereafter informed JAMS and Petitioners' counsel that it would not proceed in JAMS with arbitration under the Minimum Standards for arbitrations outside California, Nevada, and Oregon because Twitter refused to pay the full arbitration fees for these cases. See Exhibit 5.

40. On June 30, 2023, following Twitter's notice of its refusal to pay these fees, JAMS notified the parties that: "JAMS will close its file as JAMS will not proceed with cases that we have determined fall under our Employment Minimum Standards if Respondent will not abide by those standards."

41. Under the arbitration agreement that Twitter drafted, and the parties signed, the parties are required to abide by JAMS Rules, which in turn require application of the Minimum Standards. Moreover, while JAMS Rules permit the parties to agree to other rules, JAMS policy requires application of the Minimum Standards. JAMS has stated that it will refuse to proceed with administering arbitrations for which Twitter does not agree to comply with the Minimum Standards (unless Claimants agree to waive those standards, which Petitioners have not agreed to waive).

42. By refusing to abide by the JAMS Minimum Standards and pay the full arbitrator fees as required by those standards (which Twitter was or should have been aware of when entering into these arbitration agreements and moving to compel employees' claims to arbitration), Twitter is preventing the arbitrations from proceeding forward. By doing so, it has interfered with Petitioners' right to arbitrate their claims at JAMS, as required by their agreements.

43. Petitioners, for whom Twitter has refused to pay the full arbitration fees for their cases are aggrieved by Twitter's failure, neglect, and refusal to arbitrate under its own written agreement, which requires Twitter's compliance with the JAMS Minimum Standards.

44. As stated above, for those Petitioners whose arbitration agreements did not specify JAMS as the arbitration provider, the parties agreed to use the American Arbitration Association ("AAA") as the arbitration provider. A sample demand filed with the AAA by those Petitioners is attached as Exhibit 7.

45. AAA determined at the outset that these arbitrations would proceed on the Employment/Workplace Multiple Case Filing Administrative Fee Schedule ("AAA Fee Schedule"), and Twitter agreed. Exhibit 8.

46. The AAA Fee Schedule states that "[t]he company shall pay the arbitrator's compensation unless the individual, post dispute, voluntarily elects to pay a portion of the arbitrator's compensation." Exhibit 9.

47. Twitter subsequently informed AAA and Petitioners' counsel that it would not proceed in AAA with arbitration under the AAA Fee Schedule for arbitrations outside California, Nevada, and Oregon because Twitter refuses to pay the full arbitration fees for these cases.

48. AAA stated that it would not proceed with administering arbitrations for which Twitter does not agree to comply with the AAA Fee Schedule (unless Claimants agree to waive those standards, which Petitioners have not agreed to waive).

49. By refusing to abide by the AAA Fee Schedule and pay the full arbitrator fees as required by those standards (which Twitter was or should have been aware of when entering into these arbitration agreements, agreeing to submit to AAA's jurisdiction, and moving to compel employees' claims to arbitration), Twitter is preventing the arbitrations from proceeding forward. By doing so, it has interfered with Petitioners' right to arbitrate their claims at AAA, as required by their agreements.

50. Petitioners whose arbitration agreements do not specify JAMS as the arbitration provider (and for whom the parties agreed to proceed in arbitration before the AAA) are aggrieved by Twitter's failure, neglect, and refusal to arbitrate under its own written agreement, and subsequent agreement to submit to AAA's jurisdiction, which requires Twitter's compliance with the AAA Fee Schedule.

51. Petitioners' counsel previously filed a similar Petition to Compel arbitration in the Northern District of California. See Ma et al v. Twitter, Inc., No. 23-cv-03301 (N.D. Cal.). That Petition was originally filed as a class action, though class action status was later denied. On February 7, 2025, the Court in Ma issued an order, agreeing that Twitter had to pay full arbitration fees for cases outside California, Nevada, and Oregon, but concluded that Petitioners would need to obtain an order compelling arbitration from the district in which the arbitration would proceed (which, under the agreement, would be the location of where the Petitioners

worked for Twitter). Id. (Dkt. 67). Petitioners are therefore now filing this Petition to Compel Arbitration in Massachusetts, which is where they worked for Twitter.

### COUNT I – FEDERAL ARBITRATION ACT

Petitioners are aggrieved by Twitter's failure, neglect, and refusal to arbitrate under its own written agreement. Accordingly, this Court should compel Twitter to arbitrate at JAMS and AAA, as agreed to by the parties, under 9 U.S.C. § 4.

### PRAYER FOR RELIEF

WHEREFORE, Petitioners respectfully request that this Court:

1.   Enter an Order requiring that Twitter arbitrate the claims of Petitioners pursuant to the terms of their arbitration agreements, including by complying with JAMS Minimum Standards and AAA rules, and paying the arbitration fees and costs JAMS and AAA have determined are necessary to empanel arbitrators and allow the arbitrations to proceed.

2.   Award any additional relief to which Petitioners and those similarly situated are entitled.

Respectfully submitted,

PETITIONERS DAVID BRAUNSTEIN et al,

By their attorneys,

/s/ *Shannon Liss-Riordan*
Shannon Liss-Riordan, BBO #640716
Thomas Fowler, BBO #688521
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
Email:  sliss@llrlaw.com, tfowler@llrlaw.com

Dated:        March 28, 2025