UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DAVID BRAUNSTEIN *et al.*, <br><br> Petitioners, <br><br> v. <br><br> TWITTER, INC. and X CORP., <br><br> Respondents | CASE NO.: 1:25-cv-10733-PBS |

**PETITIONERS' REPLY IN SUPPORT OF**
**THEIR MOTION TO COMPEL ARBITRATION**

**TABLE OF CONTENTS**

| | | | |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | ARGUMENT | | 3 |
| | A. | All Petitioners have signed arbitration agreements with Twitter that expressly delegate all relevant issues to arbitration. | 3 |
| | B. | This Court must honor JAMS' and AAA's rulings on delegated issues rather than conduct its own analysis. | 4 |
| | C. | In any event, JAMS and AAA correctly interpreted their own (incorporated) rules and the parties' arbitration agreement. | 8 |
| III. | CONCLUSION | | 10 |

# **TABLE OF AUTHORITIES**

**CASES**

*Appel Corp. v. Katz*,
   217 F. App'x 3 (2d Cir. 2007) .................................................................................................. 7

*Armstrong v. White Winston Select Asset Funds, LLC*,
   648 F. Supp. 3d 230 (D. Mass. 2022) ...................................................................................... 9

*Baugh-Scott v. Sallie Mae, Inc.*,
   2014 WL 5493243 (S.D.N.Y. Oct. 30, 2014) .......................................................................... 7

*Big City Small World Bakery Cafe, LLC v. Francis David Corp.*,
   265 F. Supp. 3d 750 (E.D. Mich. 2017) ................................................................................... 9

*California Dep't of Toxic Substances Control v. Exxon Mobil Corp.*,
   2024 WL 645417 (E.D. Cal. Feb. 14, 2024) .......................................................................... 10

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213 (1985) ................................................................................................................. 3

*Delano v. Mastec, Inc.*,
   2010 WL 4809081 (M.D. Fla. 2010) ..................................................................................... 10

*Diemaco, a Div. of Devtek Corp. v. Colt's Mfg. Co.*,
   11 F. Supp. 2d 228 (D. Conn. 1998) ........................................................................................ 7

*Eyewonder, Inc. v. Abraham*,
   2010 WL 3528882 (S.D.N.Y. Sept. 3, 2010) ........................................................................... 7

*First Nat. Bank of Milaca v. Heimann*,
   572 F.2d 1244 (8th Cir. 1978) ................................................................................................. 9

*Frazier v. X Corp*,
   739 F. Supp. 3d 219 (S.D.N.Y. 2024) ............................................................................. 1, 5, 8

*Gen. Hosp. Corp. v. Esoterix Genetic Laboratories, LLC*,
   16 F.4th 304 (1st Cir. 2021) ..................................................................................................... 9

*Hagan v. Park Miller LLC*,
   2020 WL 7319357 (N.D. Cal. Dec. 11, 2020) ......................................................................... 6

*Hanover A.G. v. Am. Arbitration Ass'n*, No. 92 Civ. 1643(CSH),
   1993 WL 159961 (S.D.N.Y. May 11, 1993) ........................................................................... 7

*Howsam v. Dean Witter Reynolds, Inc.*,
    537 U.S. 79 (2002) .................................................................................................... 6

*Idea Nuova, Inc. v. GM Licensing Grp., Inc.*,
    2010 WL 10041842 (S.D.N.Y. Oct. 18, 2010) ................................................... 6, 7

*In re Marriage of Kostelnik*,
    381 Mont. 182 (2015) ............................................................................................ 10

*In re Marriage of Morris*,
    266 Ill. App. 3d 277 (1994) ................................................................................... 10

*Jones v. Starz Ent., LLC*,
    129 F.4th 1176 (9th Cir. 2025) ............................................................................... 6

*King Cnty. v. Swiss Reinsurance Am. Corp.*,
    2005 WL 8172767 (W.D. Wash. Aug. 31, 2005) ................................................... 9

*Koch Oil, S.A. v. Transocean Gulf Oil Co.*,
    751 F.2d 551 (2d Cir.1985) ..................................................................................... 7

*KOS Ltd. v. Dockery*,
    2024 WL 1129753 (Ga. Ct. App. Mar. 15, 2024) ................................................. 10

*Lamps Plus, Inc. v. Varela*,
    587 U.S. 176 (2019) ................................................................................................ 9

*Lang v. PTC, Inc.*,
    2021 WL 5277190 (D.N.J. Nov. 12, 2021) ............................................................. 5

*Ma v. Twitter, Inc.*,
    2025 WL 436636 (N.D. Cal. Feb. 7, 2025) ......................................................... 1, 5

*Maheu v. Twitter*,
    1:25-cv-836 (S.D.N.Y. 2025) .................................................................................. 2

*Michaels v. Mariforum Shipping S.A.*,
    624 F.2d 411 (2d Cir.1980) ..................................................................................... 7

*Nat'l Bulk Carriers v. United States*,
    183 F.2d 405 (2d Cir. 1950) .................................................................................... 9

*Own Cap., L.L.C. v. Johnny's Enters., Inc.*,
    2011 WL 2560334 (E.D. Mich. June 28, 2011) ...................................................... 9

*Poland v. Martin*,
    761 F.2d 546 (9th Cir. 1985) ................................................................................... 9

*Prudential Real Est. Affiliates, Inc. v. Prudential MGM Realty, Inc.*,
    959 F.2d 241 (9th Cir. 1992) .................................................................................. 6

*Rosa v. X Corp.*,
    2024 WL 4903619 (D.N.J. Nov. 27, 2024) ............................................................. 1

*Simpson v. Hand*,
    1840 WL 3924 (Pa. 1840) ...................................................................................... 10

*United States v. Coeur d'Alenes Co.*,
    767 F.3d 873 (9th Cir. 2014) ................................................................................. 10

*Vital Pharms. Inc. v. PepsiCo Inc.*,
    2022 WL 2176528 (D. Ariz. June 16, 2022) ......................................................... 6

*Woodfield v. X Corp.*,
    No. 1:23-cv-00780-JLH (D. Del. 2023) ................................................................ 1

*X Corp v. McGrath*,
    3:25-cv-00748 (S.D.Cal. 2025) .............................................................................. 2

*X Corp. v. Adusei*,
    4:25-cv-02926 (N.D.Cal. 2025) ............................................................................. 2

*X Corp. v. Bahr*,
    2:25-cv-02766 (C.D.Cal. 2025) ............................................................................. 2

*York Rsch. Corp. v. Landgarten*,
    927 F.2d 119 (2d Cir. 1991) .................................................................................. 8

**OTHER AUTHORITIES**

AAA Employment Arbitration Rules and Mediation Procedures, *available at*
    https://www.adr.org/media/sj3jfivl/employmentrules_web_3.pdf ..................... 5

AAA Supplementary Rules for Multiple Case Filings, *available at*
    https://www.adr.org/media/j1alswkc/supplementary_rules_multiplecase_fi
    lings.pdf ................................................................................................................ 5

*JAMS Rules*, available at https://www.jamsadr.com/rules-employment-
    arbitration/english ................................................................................................ 4

I.  **INTRODUCTION**

In its opposition, Twitter repeats the same arguments that have all been repeatedly rejected by multiple adjudicators — namely two different federal courts, both of the parties' chosen arbitration providers (JAMS and AAA), and the only individual arbitrator known to have explicitly addressed the issue in a written decision.[1] Despite these decisions, Twitter seeks to

---

[1]  *Frazier v. X Corp*, 739 F. Supp. 3d 219, 221–31 (S.D.N.Y. 2024); *Ma v. Twitter, Inc.*, 2025 WL 436636, at *1–13 (N.D. Cal. Feb. 7, 2025); Dkt. 1-4, 1-5 (memorializing JAMS' determination that Twitter is responsible for all arbitration fees other than the case initiation fees borne by Petitioners); Dkt. 1-8, 10-4, 10-5, 16-4 (same as to AAA); *Woodfield v. X Corp.*, No. 1:23-cv-00780-JLH (D. Del. 2023) at Dkt. 54 (attaching arbitration decision in *Yunfeng Zhang v. Twitter, Inc., et al.*) (attached here as Ex. 2) (individual arbitrator's decision holding Twitter is "required to pay all the JAMS fees and arbitrator fees (other than the initial case management fees)").

While Twitter very heavily relies upon the only authority addressing the same arbitration agreement at issue here that plausibly supports its flawed position — *Rosa v. X Corp.*, 2024 WL 4903619 (D.N.J. Nov. 27, 2024), *designated as "Not For Publication"* — this decision is both a deeply flawed outlier and a product of the parties' poor briefing.

For starters, the *Rosa* court itself noted that the litigant, Rosa, "appear[ed] to have waived his opportunity to rebut the arguments put forth by Twitter on this topic because he has either not provided case law or properly addressed Twitter's claims"; that he only "cite[d] to one case in order to support its claim that the JAMS Minimum Standards should apply, and Twitter should pay all costs except the initial filing fee"; that this one "case seems to actually undermine Rosa's argument"; that "Rosa ha[d] not provided cases explaining why an equal fee-apportionment is improper"; that he argued "only the JAMS case manager has determined anything regarding fee apportionment" and "appear[ed] to exclusively rely on the case manager's decision" (and there is no mention of the determination by JAMS' General Counsel's decision or the import of her authority to make the determination under JAMS' rules); that the court was "inclined to" agree with Twitter's arguments "Rosa ha[d] not substantively addressed any of the Section 6 and lack of incorporation arguments it ha[d] put forth, which should result in waiver of opposing its interpretations"; that "Rosa provide[d] no date or record of [certain factual allegations] beyond the statement" he made in his brief; that Rosa made his insubstantial arguments "all the while neglecting to substantively address many of Twitter's arguments"; and that "the Court can find he has forfeited arguing against Twitter's interpretation" of the arbitration agreements. *Id.* at *10–13 (citation omitted).

At the same time, after recounting the *Rosa* court's shotty reasoning, and "[h]aving reviewed both *Frazier* and *Rosa* and considered all of the parties' arguments," the court in *Ma* found "the *Frazier* court [to have] persuasively explained" why courts are required to defer to JAMS' initial fee decision and why, even absent such deference, JAMS' decision was the correct interpretation of the parties' arbitration agreements such that "X Corp. is therefore obligated to pay the initial arbitration fees, as ordered by JAMS, so that the arbitrations…can move forward." *Ma*, 2025 WL 436636, at *6–9. In so doing, the *Ma* court highlighted that despite *Frazier* having been decided first, and despite the manifest centrality of both the FAA's requirement that courts

1

draw the Court into an inappropriate *de novo* review of interim arbitration decisions[2] and employ the Court's help in further delaying its former employees' efforts to have their cases arbitrated, despite agreeing to arbitrate these disputes — and by doing so, agreeing to arbitrate under the rules and jurisdiction of the arbitration providers, JAMS and AAA.[3] Twitter's efforts should be flatly rejected, and it should be compelled to arbitrate as it agreed to do.

      Twitter continues to play shell games with former employees' arbitration agreements, pretending they do not exist when it suits the company while readily invoking them whenever Twitter is sued in court. Although Twitter well knows that Petitioners signed these agreements (and possesses them), Petitioners attach their signed agreements as Exhibit 3 to this reply, to put them before the Court. These agreements unambiguously delegate all relevant issues to arbitration, including the determination of arbitration fees, the application of JAMS/AAA rules, the interpretation of the agreements, and whether Petitioners were required to sign the agreements as a condition of employment. Because the parties agree that these are all delegated issues, both binding caselaw and the parties' agreed-upon rules make clear that JAMS/AAA are invested with the power to make initial fee determinations prior to the appointment of individual

---

not decide delegated issues and Twitter's argument that the word "apportion" in arbitration agreement somehow magically means split evenly, "*Rosa* did not cite *Frazier*, nor did it address questions regarding delegation or the meaning of 'apportion.'" *Id.* at *5.
      Like the court in *Ma*, this Court should decline to follow *Rosa* and instead follow the groundswell of contrary decisions.

[2]     These tactics are not new; *Twitter* has filed several of its own Petitions to Compel Arbitration (even where employees filed arbitration demands and insisted on arbitrating) in an effort to get as many bites at the apple as possible through trying to draw courts into analyzing this fee dispute *de novo*—tactics for which the undersigned counsel have filed motions for sanctions against Twitter. *See X Corp. v. Adusei*, 4:25-cv-02926 (N.D.Cal. 2025); *X Corp. v. Bahr*, 2:25-cv-02766 (C.D.Cal. 2025); *X Corp v. McGrath*, 3:25-cv-00748 (S.D.Cal. 2025).

[3]     Before Twitter changed its mind about wanting to arbitrate cases brought by its former employees (after more than 2,000 of them filed claims), Twitter paid the fees it was ordered to pay (including for an arbitration in Massachusetts, as well as others around the country) which resulted in an arbitration for which the Claimant moved to enforce the award. *See* Ex. 1 (Liss-Riordan Decl.) ¶ 2; Dkt. 10-1 ¶ 7; *Maheu v. Twitter*, 1:25-cv-836 (S.D.N.Y. 2025) at Dkt. 32.

arbitrators, and the Court must enforce their decisions, regardless of how it may have interpreted the agreement itself. In any event, JAMS' and AAA's decisions were correct readings of their rules and the parties' agreements.

Finally, in a new twist, Twitter now contradicts its prior unequivocal (and legally-supported) position, made in earnest to other courts, that proceedings to compel arbitration under Section 4 of the FAA is the proper vehicle for resolving this fee dispute. *See* Ex. 4 at 11, 17-19. But Twitter is estopped from making this contradictory argument. Regardless, Twitter has not refuted Petitioners' authority demonstrating that this dispute is ripe for adjudication pursuant to Section 4.

## II.   ARGUMENT

### A.   All Petitioners have signed arbitration agreements with Twitter that expressly delegate all relevant issues to arbitration.

Twitter's starting argument—that it is not clear that Petitioners all signed arbitration agreements—should be rejected. Twitter well knows that they did, but for the avoidance of doubt, Petitioners attach their signed agreements as Exhibit 3.

As Twitter has elsewhere acknowledged to other courts, this fee dispute is "clearly encompassed by the parties' arbitration agreement" and accordingly, "[t]he FAA 'leaves no room for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'" Ex. 4 (Twitter's Mot. to Compel Arbitration in *Woodfield*) at 13, 18 (quoting *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 218 (1985)). Indeed, the arbitration agreement expressly delegates to arbitration the very issues Twitter here presses this Court to decide, including:

> any dispute arising out of or related to Employee's employment…or termination of employment,….without limitation, disputes arising out of or relating to interpretation or application of this Agreement….disputes regarding the employment relationship, [or] terms and conditions of employment…. disputes that otherwise would be resolved in a court of law or before a forum other than arbitration…., and any disputes [ ] that regard [fee apportionment].

3

Ex. 3. Thus, as Twitter has argued to other courts, *see* Ex. 4, this Court is simply not empowered to decide the issues Twitter raises, including whether the agreement was "required as a condition of employment," the proper interpretation of JAMS/AAA rules, and fee apportionment.

  **B.  This Court must honor JAMS' and AAA's rulings on delegated issues rather than conduct its own analysis.**

  For most Petitioners, Twitter's arbitration agreement further provides for arbitration "according to the procedures found in the then-current JAMS Employment Arbitration Rules and Procedures ('JAMS Rules')." Ex. 3. The JAMS Minimum Standards are expressly incorporated into the JAMS Employment Rules by Rule 2(a), which states that parties must arbitrate "consistent with the applicable law and JAMS policies (including, without limitation, the JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness[).]" *JAMS Rules*, available at https://www.jamsadr.com/rules-employment-arbitration/english. These Minimum Standards apply when arbitration is "required as a condition of employment," which means "a condition of **initial *or* continued** employment," and they require the company to bear all arbitration fees other than an employee's initial filing fee. Dkt. 1-3 (emphasis added). They further make clear that JAMS is responsible for initially determining their applicability. *Id.*

  For all other Petitioners (whose agreements do not specify an arbitration provider or applicable rules), Twitter agreed "to having those claims proceed with the AAA and subject to AAA rules," Emails with Eric Meckley (attached here as Ex. 6), and then further agreed "to authorize the AAA to administer" the disputes "under its Employment Arbitration Rules, and Supplementary Rules for Multiple Case Filings," AAA Agreement (attached here as Ex. 7).[4]

---

[4]  Twitter's suggestion that, for AAA Petitioners, it offered to "advance claimants' portion of the arbitral fees," Opp. at 4, is misleading: in exchange for agreeing to "advance" fees it was already ordered to pay, Twitter demanded that such Petitioners agree to forever waive their right to challenge any future decisions requiring Petitioners to pay these fees—an offer Petitioners rejected (and one that does not negate Twitter's failure to arbitrate in accordance with its agreements). *See* Dkt. 10-1 ¶ 22.

4

As both the *Ma* court and the *Frazier* court explain in great detail, the arbitration agreement and JAMS Rules (including the incorporated JAMS' Minimum Standards) delegate the initial question of fee apportionment to the JAMS General Counsel. *Ma*, 2025 WL 436636, at *7–9 (first quoting JAMS Rules, then quoting *Frazier*, 739 F. Supp. 3d at 226–28); *accord Lang v. PTC, Inc.*, 2021 WL 5277190, at *4–5 (D.N.J. Nov. 12, 2021). The AAA Rules agreed to by the parties likewise delegate initial fee determinations to AAA as an entity.[5]

---

[5] *See* Dkt. 1-9 (AAA Employment/Workplace Fee Schedule – Costs of Arbitration) (repeatedly reiterating AAA's discretion to assess fees and interpret its own fee schedules); AAA Supplementary Rules for Multiple Case Filings, *available at* https://www.adr.org/media/j1alswkc/supplementary_rules_multiplecase_filings.pdf (emphasis added) ("In its sole discretion, the AAA has the authority to interpret and apply these Supplementary Rules. The AAA will make initial determinations with respect to administrative issues where necessary in order to apply these Supplementary Rules….Administrative fees will be billed according to the applicable Multiple Case Filings Administrative Fee Schedule. Administrative fees, as well as arbitrator compensation and expense deposits, are due on or before the deadline established by the AAA….Administrative fees, as well as arbitrator compensation and expenses, for each Multiple Case Filing will be billed and must be paid prior to the AAA completing the applicable administrative procedures…..After all filing requirements have been met, including payment of the AAA's initial administrative fees, and prior to the appointment of arbitrators to determine the merits (the Merits Arbitrator(s)), any party may notify the AAA and opposing parties in writing that the party disagrees with the AAA's initial determination as to any administrative issue(s). [ ] Upon receipt of a party's written notice of disagreement with an administrative determination made by the AAA with respect to a particular Multiple Case Filing, and if the parties do not agree to mediate such issue(s), or if such mediation is unsuccessful, the AAA in its sole discretion may decide whether or not to appoint an arbitrator (the Process Arbitrator) to hear and determine the administrative issue(s) for all of the cases included in the Multiple Case Filing affected by such administrative issue(s)."); *accord* AAA Employment Arbitration Rules and Mediation Procedures, *available at* https://www.adr.org/media/sj3jfivl/employmentrules_web_3.pdf ("When parties agree to arbitrate under these rules, or when they provide for arbitration by the AAA and an arbitration is initiated under these rules, they thereby authorize the AAA to administer the arbitration. The authority and duties of the AAA are prescribed in these rules, and may be carried out through such of the AAA's representatives as it may direct….All other procedures shall be interpreted and applied by the AAA….As a not-for-profit organization, the AAA shall prescribe filing and other administrative fees to compensate it for the cost of providing administrative services. The AAA administrative fee schedule in effect at the time [of] the demand for arbitration…shall be applicable. AAA fees shall be paid in accordance with the Costs of Arbitration section. The AAA may, in the event of extreme hardship on any party, defer or reduce the administrative fees.").

Contrary to Twitter's unsupported claims, countless courts have repeatedly explained that courts must defer to these arbitration providers' interpretations of their own rules with the same level of deference as individual arbitrators. The Ninth Circuit, for example, has explained:

> Jones takes issue with the fact that the consolidation order came from the JAMS National Arbitration Committee, which she characterizes as "JAMS administrators," rather than an appointed arbitrator….It strains credulity to believe that it is the business of a federal court to second-guess an independent arbitration provider's application of its own rule—a rule incorporated into the parties' agreement…. Jones may be dissatisfied with JAMS's interpretation of its own rules, but the JAMS Rules are what she agreed to and she can seek recourse within those Rules.

*Jones v. Starz Ent., LLC*, 129 F.4th 1176, 1183–85 (9th Cir. 2025). The Ninth Circuit continued:

> The JAMS National Arbitration Committee is itself composed of arbitrators from the JAMS roster, so in one sense, Jones's distinction between arbitrators and administrators is exaggerated. In any case, it is inescapable that JAMS would have to make certain procedural decisions prior to the selection of an arbitrator, not least because the Terms incorporated the JAMS Rules. Rule 1(c) states: "The authority and duties of JAMS as prescribed in the Agreement of the Parties and in these Rules shall be carried out by the JAMS National Arbitration Committee ('NAC') ...." Rule 6 outlines several pre-arbitration administrative decisions that JAMS can make. Rule 11(a) conditions an arbitrator's authority to resolve disputes about the JAMS Rules on the arbitrator's being appointed, implying that at least some JAMS rules can be applied and effectuated prior to such appointment.

*Id.* at 1184.[6] Likewise, courts in the Second Circuit have explained:

---

[6] *Accord Prudential Real Est. Affiliates, Inc. v. Prudential MGM Realty, Inc.*, 959 F.2d 241 (9th Cir. 1992) ("The AAA's application of its own rules is significant, particularly because the parties had agreed that the AAA would administer the arbitration according to AAA's commercial arbitration rules."); *Vital Pharms. Inc. v. PepsiCo Inc.*, 2022 WL 2176528, at *3 (D. Ariz. June 16, 2022) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 85 (2002)) ("The Court has no warrant to disturb the AAA's interpretation of its own rules."); *Hagan v. Park Miller LLC*, 2020 WL 7319357, at *4 (N.D. Cal. Dec. 11, 2020), *order clarified,* 2021 WL 1688347 (N.D. Cal. Apr. 29, 2021) ("[I]t is for the AAA, not the Court, to decide whether the AAA consumer or commercial rules apply….Even if Park Miller is right that the AAA erred in this decision, Park Miller breached its arbitration agreement by refusing to abide by the AAA's decision. Neither the parties' agreement nor any other authority cited by Park Miller empowers the Court to second-guess the AAA's decision or otherwise short-circuit the arbitration process. Park Miller must submit to arbitration and abide by the AAA's determinations regarding which AAA rules to apply."); *see also, e.g., Idea Nuova, Inc. v. GM Licensing Grp., Inc.*, 2010 WL 10041842, at *3–5 (S.D.N.Y. Oct. 18, 2010) ("The…prohibition on interlocutory review of

> The Second Circuit's prohibition on interlocutory review of interim rulings by arbitrators similarly applies to threshold determinations by the AAA. Even if one assumes there is a distinction between an interlocutory decision of the AAA and an interim ruling of an arbitrator, it is a technical distinction without a difference. Both are similarly intermediary steps in deciding all claims submitted to arbitration. Moreover, the statutory and policy concerns driving the Court's decision in *Michaels* are equally implicated when a party seeks judicial review of a threshold determination made by the AAA…. *See Hanover A.G. v. Am. Arbitration Ass'n.*, No. 92 Civ. 1643(CSH), 1993 WL 159961, at *5 (S.D.N.Y. May 11, 1993) ("The AAA is responsible for interpreting the AAA Rules and the parties are not free to simply ignore interpretations they do not agree with.").

*Idea Nuova, Inc. v. GM Licensing Grp., Inc.*, 2010 WL 10041842, at *3–5 (S.D.N.Y. Oct. 18, 2010) (citing *Michaels v. Mariforum Shipping S.A.*, 624 F.2d 411, 414 (2d Cir.1980) ("[A] district court is without authority to review the validity of arbitrators' rulings prior to the making of an award.")).[7]

---

interim rulings by arbitrators similarly applies to threshold determinations by the AAA. Even if one assumes there is a distinction between an interlocutory decision of the AAA and an interim ruling of an arbitrator, it is a technical distinction without a difference. Both are similarly intermediary steps in deciding all claims submitted to arbitration."); *Diemaco, a Div. of Devtek Corp. v. Colt's Mfg. Co.*, 11 F. Supp. 2d 228, 231–32 (D. Conn. 1998) (holding, on petition to compel arbitration, that court was bound by AAA's decision as to its interpretation of parties' agreement and its own rules and procedures, and court could not allow interlocutory review of its decision).

[7]     *Accord Appel Corp. v. Katz*, 217 F. App'x 3, 4 (2d Cir. 2007) (quoting *Koch Oil, S.A. v. Transocean Gulf Oil Co.,* 751 F.2d 551, 554 (2d Cir.1985) ("[I]n light of the AAA rule vesting it with the authority to interpret and apply its own rules, parties are obligated to comply with the AAA's determinations so long as they are 'within reasonable limits.'"); *Eyewonder, Inc. v. Abraham*, 2010 WL 3528882, at *5 n.21 (S.D.N.Y. Sept. 3, 2010) (citing *id.*) ("The Assistant Vice-President for the AAA stated in a letter to Defendant that the arbitrator was selected in accordance with their rules. This Court sees no reason to depart from the conclusion made by the Assistant Vice-President who is most familiar with their rules."); *Baugh-Scott v. Sallie Mae, Inc.*, 2014 WL 5493243, at *5 (S.D.N.Y. Oct. 30, 2014) (citation omitted) ("To the extent Petitioners are challenging the AAA's decision to apply the Supplementary Procedures rather than the Commercial Arbitration Rules, however, the Court has no authority to overturn that decision (or, if it did have such authority, any reason to do so). The parties' agreement specifies that arbitration will occur under 'the applicable rules' of the AAA, and those rules, in turn, expressly give the AAA 'discretion to apply or not apply the Supplementary Procedures.'"); *Diemaco, a Div. of Devtek Corp. v. Colt's Mfg. Co.*, 11 F. Supp. 2d 228, 231–32 (D. Conn. 1998) (citations omitted) (holding, on petition to compel arbitration, that court was bound by AAA's decision as to its interpretation of parties' agreement and its own rules and procedures, and court could not allow interlocutory review of its decision); *York Rsch. Corp. v. Landgarten*, 927 F.2d 119, 123

Accordingly, this Court should not conduct its own analysis of the parties' fee dispute or the application of the JAMS/AAA Rules, JAMS Minimum Standards or AAA Fee Schedules. It should instead order Twitter to arbitrate in accordance with JAMS' and AAA's own interpretations and applications of their own rules.

C.  **In any event, JAMS and AAA correctly interpreted their own (incorporated) rules and the parties' arbitration agreement.**

While the Court should not engage in its own interpretation of the contractual language and arbitral rules, if the Court does decide to reach such issues, it should find that JAMS and AAA were correct in determining that Twitter must pay all fees other than initial filing fees.

***First***, the *Frazier* decision persuasively outlines why these agreements are indeed required as a condition of employment, even if arbitration is not. *See Frazier*, 2024 WL 3370887, at *7–9. Also, the Minimum Standards themselves make clear that the phrase refers to "a condition of **initial** or continued employment." Dkt. 1-4 (emphasis added). Here, employees were required to sign these arbitration agreements *as a precondition to accepting Twitter's job offer*. *See, e.g.*, Ex. 5 ("To accept this offer, please…sign and date…[the] Dispute Resolution Agreement….This offer will expire if the signed documents are not returned by August 31, 2021."). Only after first agreeing to the arbitration agreement could Petitioners avail themselves of the opt-out provisions, rendering the agreement required for initial employment. *Accord Frazier* at *7.

***Second***, given the applicability of the JAMS Minimum Standards, Twitter's sole remaining argument is that the contractual term "apportioned" intrinsically means "split evenly." But a litany of blackletter contract law principles, dictionaries, and cases all make this interpretation untenable.

---

(2d Cir. 1991) ("[W]eight must be given to the fact that the AAA interpreted its Commercial Rules to permit the arbitration panel to hear the case. The parties agreed that the AAA should administer the arbitration process and apply its Commercial Arbitration Rules. Given the parties' designation of the AAA as the supervisory authority regarding the resolution of disputes under the agreement, the AAA's view of the meaning of its rules is of considerable significance.").

For starters, when a contractual term is unambiguous, "'[t]he guiding principle is that the plain meaning of the unambiguous terms…control." *Armstrong v. White Winston Select Asset Funds, LLC*, 648 F. Supp. 3d 230, 246 (D. Mass. 2022) (citing *Gen. Hosp. Corp. v. Esoterix Genetic Laboratories, LLC*, 16 F.4th 304, 310 (1st Cir. 2021). In other words, courts must simply apply "the plain meaning that a lay person would normally attach to them," and "should not strain for interpretations to create ambiguities where none exist." *Poland v. Martin*, 761 F.2d 546, 548 (9th Cir. 1985). Courts are only to resort to dictionary definitions when a term is genuinely ambiguous. *Id.* But to the extent the term "apportioned" is ambiguous, Twitter drafted the agreement and failed to make clear what it now contends the agreement says—that the fees should be split evenly by the parties. As the drafter of the agreement, the doctrine of *contra proferentem* "resolves the ambiguity against the drafter," especially given "the parties' relative bargaining strength." *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 186 (2019). Regardless, even were the Court to turn to dictionaries as Twitter implores, it is clear that "apportion" does not automatically mean a 50/50 split (and could mean, as JAMS/AAA ordered, that Petitioners pay their case initiation fees and Twitter pays all other fees).[8] Twitter argues that because certain dictionary definitions of "apportion" reference allocating "proportionally," this must in turn mean "evenly." But these definitions do not even support Twitter's interpretation.[9]

---

[8]    Twitter could easily have used clear language if it intended for fees to be split equally. *See, e.g.*, *Own Cap., L.L.C. v. Johnny's Enters., Inc.*, 2011 WL 2560334, at *2 (E.D. Mich. June 28, 2011) (arbitration agreement provided, "[a]ll costs, expenses, and fees of the arbitrator shall be shared equally by the parties"); *King Cnty. v. Swiss Reinsurance Am. Corp.*, 2005 WL 8172767, at *1 (W.D. Wash. Aug. 31, 2005) (arbitration agreement provided, "[u]nless otherwise allocated by the arbitrators, all costs of the arbitration proceedings, including the fees of the arbitrators, shall be borne equally by the parties"); *Big City Small World Bakery Cafe, LLC v. Francis David Corp.*, 265 F. Supp. 3d 750, 754 (E.D. Mich. 2017) (arbitration agreement provided, "All fees and expenses of the arbitration shall be borne by the parties equally").

[9]    *See, e.g.*, *First Nat. Bank of Milaca v. Heimann*, 572 F.2d 1244, 1249 (8th Cir. 1978) ("The term 'in proportion to' is not precise; it may mean any one of several things."); *Nat'l Bulk Carriers v. United States*, 183 F.2d 405, 410 (2d Cir. 1950) (Hand, C.J., dissenting) (emphasis added) ("I do not mean that I should divide the damages **equally**, if I were free to divide them

Likewise, courts interpreting the word "apportioned" in a variety of contexts have consistently held that it does not require equal splitting.[10]  In fact, interpreting nearly identical language in an arbitration agreement, the court in *Delano v. Mastec, Inc.*, 2010 WL 4809081, at *6 (M.D. Fla. 2010) (cleaned up), specifically found: "[T]he arbitration agreement's provision that arbitrator and arbitration fees 'will be apportioned between the parties by the Arbitrator in accordance with applicable law' is not informative as to the likely allocation of arbitration fees."

### III.   CONCLUSION

For the foregoing reasons, Petitioners respectfully request that this Court grant their Motion to Compel Arbitration forthwith.

Respectfully submitted,

PETITIONERS DAVID BRAUNSTEIN et al.,

By their attorneys,

/s/ *Shannon Liss-Riordan*
Shannon Liss-Riordan, SBN 2971927
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
Email:  sliss@llrlaw.com

Dated:          July 7, 2025

---

**proportionately** to the relative fault of the vessels. **An equal division in this case would be plainly unjust; they ought to be divided in some such proportion as five to one**.").

[10]     *See, e.g.*, *California Dep't of Toxic Substances Control v. Exxon Mobil Corp.*, 2024 WL 645417, at *4 (E.D. Cal. Feb. 14, 2024) (citing *United States v. Coeur d'Alenes Co.*, 767 F.3d 873, 877 (9th Cir. 2014)) ("However, apportionment does not necessarily need to be exactly proportional to fault."); *Simpson v. Hand*, 1840 WL 3924, at *6 (Pa. 1840) ("A]pportion' does not mean equally divided."); *In re Marriage of Morris*, 266 Ill. App. 3d 277, 281 (1994) ("Just or equitable apportionment does not necessarily mean equal division."); *In re Marriage of Kostelnik*, 381 Mont. 182, 188 (2015) ("[C]ontrary to Daniel's argument, equitable apportionment does not require an equal distribution of the marital estate."); *KOS Ltd. v. Dockery*, 2024 WL 1129753, at *5 (Ga. Ct. App. Mar. 15, 2024) (cleaned up) ("Simply put, the fact…that their fault *could* have been apportioned does not mean that the factfinder had a basis to determine the degree to which each liable defendant contributed to the damages.").

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that on July 7, 2025, she filed and served the foregoing document via the Court's CM/ECF system, which will send notice of the filing to all counsel of record. Parties may access the filing through the Court's CM/ECF system.

                                            */s/ Shannon Liss-Riordan*
                                            Shannon Liss-Riordan